[No. 24146. Department Two. January 7, 1933.]

ROSE NEAL et al., *Respondents*, v. MONTBORNE LUMBER COMPANY et al., *Appellants*, JOSEPH KOWOL et al., *Respondents*.[1]

[1]Reported in 18 P. (2d) 8.

*R. V. Welts,* for appellants.

*Rummens & Griffin* and *Tucker & Tucker,* for respondents.

Beals, J.—Mrs. Rose Neal and her grandsons, Ray and Bert Gifford, brought this action against Montborne Lumber Company, a corporation, and its receiver, asking for judgment upon promissory notes executed in their favor by the corporation and for the foreclosure of a lien which they claimed upon 1,533 shares of the capital stock of Nelson-Neal Lumber Company, a corporation, which stock they alleged had been pledged to them to secure payment of the notes. Joseph Kowol, his daughter, Emma Kowol, and C. E. Bingham & Company, a corporation, were joined as parties defendant, under an allegation that they claimed an interest in the collateral which plaintiffs claimed had been pledged to them as security. Thomas Smith and James G. Smith were made defendants as stockholders in and directors of the Montborne Company.

Emma Kowol disclaimed all interest in the subject matter of the action, and the case was as to her dismissed. The action was also eventually dismissed as to C. E. Bingham & Company. Joseph Kowol filed his cross-complaint against plaintiffs and against defendant Montborne Lumber Company and its receiver, asking for judgment against these parties for the sum of $13,500, that he be given a prior lien upon the 1,533 shares of stock of the Nelson-Neal Lumber Company, above referred to, and for other relief.

Montborne Lumber Company, by its receiver, filed its answer, admitting the execution of the notes sued upon and non-payment thereof, but pleading affirmatively that, at the time of the pledge of the stock, the corporation was insolvent, and also that, while the

corporation was insolvent, certain payments had been made on the notes, both to plaintiffs, to Bingham & Co., and to cross-complainant Joseph Kowol, and that, because of the insolvency of the corporation, the pledge of the stock was void as against the corporation's creditors; that the payments made amounted in law to a preference, and that the amounts so paid should be returned to the receiver for the benefit of all the creditors of the corporation. The corporation prayed for a cancellation of the pledge agreement, and for judgment against the plaintiffs, defendant Bingham & Co., and cross-complainant Kowol, for the recovery of the payments which the corporation had made.

The action was tried to the court, and resulted in judgment in favor of cross-complainant Joseph Kowol against plaintiffs and the Montborne Company for the sum of approximately $15,000, and awarding cross-complainant a first lien upon the corporate stock, which the court found had been lawfully pledged. Plaintiffs were awarded judgment for something over $7,100 against the Montborne Company, together with a lien upon the stock, subject to the lien of cross-complainant Kowol. From this judgment, Montborne Lumber Company and its receiver have appealed. References in this opinion to appellant will refer to Montborne Lumber Company.

Appellants make the following assignments of error:

"(1) The court erred in entering judgment in favor of plaintiffs and cross-complainants, in so far as the same was adjudged to be a lien upon 1533 shares of capital stock of Nelson-Neal Lumber Company, and in directing the foreclosure of such lien and the sale of said stock or any portion thereof.

"(2) The court erred in dismissing the cross-complaint of defendant receiver of Montborne Lumber Company, in so far as said defendant claimed to be the

owner of the stock of Nelson-Neal Lumber Company, a corporation, free and clear of any pledge or claim of the plaintiffs or cross-complainants therein.

"(3) The court erred in denying the receiver of Montborne Lumber Company affirmative judgment against the defendants Kowol."

The facts leading up to this litigation are extremely confused. A brief statement thereof follows: Messrs. Nelson and Neal were for many years associated together in the logging and lumber business, which they carried on in Skagit county. They organized the Nelson-Neal Lumber Company, with a capital stock of two hundred thousand dollars, divided into two thousand shares of stock of the par value of one hundred dollars each. Thomas Smith of Mount Vernon acted as their attorney. Mr. and Mrs. Nelson owned a majority of the capital stock, Mr. and Mrs. Neal owning the remainder.

Mrs. Nelson died in 1913, and Mr. Nelson died two years later, his stock descending to his children. Mr. Neal then purchased additional stock from certain of the Nelson heirs, making a total of 1,533 shares owned by the Neals, the Nelson heirs owning the balance of 467 shares. To raise money to buy this stock, Mr. Neal borrowed from respondent Joseph Kowol and his daughter, Emma, giving them as security a certificate for 171 shares of the stock, which was pledged under written contract, the contract and notes being renewed from year to year. Later, 409 shares of the stock were pledged to C. E. Bingham & Company as security for a loan of approximately $8,000, and to three of the Nelson heirs as security for $10,620.

Mr. Neal died intestate May 20, 1924, having then in his possession the remaining 953 shares of the capital stock. Mr. Neal left as his heirs his widow, Rose Neal, and his two grandsons, Bert and Ray Gifford,

294

plaintiffs and respondents in this action. Rose Neal was appointed administratrix of the estate, Thomas Smith acting as her attorney.

August 2, 1924, the notes which Mr. Neal had executed in favor of Joseph and Emma Kowol fell due and, together with the pledge, were renewed. The last renewal was had August 2, 1927, the notes then aggregating $37,000. The only property of the Neal estate consisted of the 1,533 shares of the capital stock of Nelson-Neal Lumber Company. Mrs. Neal was an aged lady, without experience in business, and her grandsons were not qualified, either by education or training, to conduct the extensive operations of the logging and lumber business, which fell upon evil days.

During the spring of 1926, appellant Montborne Lumber Company was organized by Mr. Smith, who owned twenty-five per cent of the stock. He was also president of the company and one of its trustees. A Dr. Daniels, who resided in Wisconsin, owned the remainder of the stock (less one share), and he and F. F. Day, who owned one share, were also trustees of the corporation. June 2, 1926, Mr. Smith prepared a contract of conditional sale whereby the Nelson-Neal Company agreed to sell all of its property to the Montborne Company—the mill property for sixty thousand dollars, the timber on a stumpage basis. Upon execution of this contract, the Montborne Company went into possession and operated the property. March 1, 1928, the mill was totally destroyed by fire, the thirty thousand dollars of insurance carried thereon being paid to the Montborne Company and used by it in the course of its business.

Mr. Kowol, feeling that his security was impaired, began to agitate for payment of his notes or additional security. The Nelson heirs, who still owned 467 shares

of the Nelson-Neal stock, contended that Mrs. Neal had drawn, as dividends on her stock, money belonging to the corporation, to a share of which they were entitled. Taxes were due against the company property, and it became evident that the property rights of all concerned were dangerously involved. Mr. Smith was representing Mrs. Neal as her attorney, and was handling the affairs of the Montborne Company, of which he was president. Both Mr. Kowol and the Nelson heirs were demanding that their claims be, in some way, better protected or paid.

Under date June 1, 1928, Mrs. Neal and the Giffords, being represented by Mr. Smith, by an instrument in writing agreed to sell to Montborne Company their 1,533 shares of the Nelson-Neal stock. The agreement recited that the vendors (who will hereinafter be referred to collectively as Mrs. Neal) had pledged the stock to Bingham & Co. and the Nelson heirs, as security for the payment of $19,000, and that 171 shares of the stock had been pledged to Joseph Kowol, as security for the payment of approximately $37,000. Montborne Company, the vendee in the contract, agreed to pay the claim of the Nelson heirs and release the stock held by Bingham & Co. from that particular pledge. Appellant also agreed to pay the indebtedness to Bingham & Co., after a renewal of the notes evidencing the same. In regard to the claim of Mr. Kowol, the parties agreed as follows:

"That the said first parties agree to give the said Joseph Kowol $5,000 cash, which shall apply on the said account of first parties and that then the said first parties shall execute to the said Kowol one note falling due December 1st, 1928, for $5,000, one note falling due June 1st, 1929, for $10,000, and one note for the balance of the said Kowol account, all of said notes to bear interest at the rate of seven per cent per annum after maturity, and which notes when so given the second

party agrees to pay at their maturity, provided the said Kowol accepts the same.''

It was further agreed that appellant would pay respondent Neal five hundred dollars in cash and execute in her favor thirty-nine promissory notes for five hundred dollars each, due monthly without interest, and that, for the purpose of securing the notes due Mr. Kowol and the notes to Mrs. Neal, all of the Nelson-Neal stock should stand pledged. Pursuant to this agreement, appellant paid the claim of the Nelson heirs, and Bingham & Co. extended the time of the payment of the eight thousand dollars due, still holding 409 shares of stock as security.

The agreement above referred to provided, as above set forth, that the performance of the arrangement for taking care of Mr. Kowol was contingent upon his acceptance thereof. Respondent Neal contends that Mr. Smith was to negotiate with Mr. Kowol concerning this matter, while appellant contends that the negotiations were to be conducted by Mrs. Neal. In this connection, we may state that respondent's testimony on this point is more convincing than that introduced on behalf of appellant; but, in any event, the matter was not placed before Mr. Kowol in such a manner that it was acceptable to him. Appellant had paid considerable sums pursuant to the contract, Mr. Kowol was threatening suit, tax liens against the Nelson-Neal property were unpaid, other matters were pressing for adjustment, and matters were manifestly *in extremis*.

After negotiations between respondent Neal and appellant, a new contract, bearing date June 22, was entered into, which contract reads as follows:

''THIS AGREEMENT made and entered into this 22nd day of June, 1928, between Rose Neal, a widow, Ray Gifford and Bert Gifford the parties of the first part,

and the Montborne Lumber Company, a corporation, the party of the second part.

"WITNESSETH: That Whereas heretofore and on the 1st day of June, 1928, the parties hereto entered into a contract wherein the second party purchased all the stock owned by the said first parties in the Nelson-Neal Lumber Company, and

"WHEREAS, by the terms of said contract, it contained the following provision:

" 'That the said first parties agree to give the said Joseph Kowol $5,000 cash, which shall apply on the said account of first parties and that then the said first parties shall execute to the said Kowol one note falling due December 1st, 1928, for $5,000, one note falling due June 1st, 1929, for $10,000, and one note for the balance of the said Kowol account, all of said notes to bear interest at the rate of seven per cent. per annum after maturity, and which notes when so given the said second party hereby agrees to pay at their maturity, provided the said Kowol accepts the same.'

"and WHEREAS the said Kowol refuses to accept the said notes as provided in said contract of June 1st, 1928, and

"WHEREAS, the said second party is willing to deliver the said notes to the said first parties and to pay the said $5,000 cash and

"WHEREAS, it is the desire of the said parties under the said contract of June 1st, 1928, that the said notes be made payable to Rose Neal, and

"WHEREAS the said Kowol now has one hundred seventy-one shares of the capital stock of the said Nelson-Neal Lumber Company in his possession and which stock upon the said second party making the payments as herein provided, shall be turned over to it.

"Now, THEREFORE, the premises considered and in consideration of the mutual promises and agreements herein contained, It Is HEREBY AGREED as follows:

"That the said second party has this day paid to Rose Neal the sum of Five Thousand Dollars, and has also executed a note for $5,000 due December 1st, 1928, one note due June 1st, 1929, for $10,000 and two notes due December 1st, 1929, one for $8,000 and the other

for $7,961.42. All of said notes to bear interest at the rate of seven per cent. per annum after maturity.

"It is further agreed that all the terms and conditions of said contract of June 1st, 1928, have now been carried out, and that the said contract of June 1st, 1928, is hereby annulled and this contract shall take the place of the said contract of June 1st, 1928.

"It is further agreed that the said second party shall have a right to keep in its possession one of the notes falling due December 1st, 1929, and upon the payment of the same the first parties are to deliver the one hundred seventy-one shares now held by the said Kowol and that when said note matures and is paid, the said parties hereto agree to surrender the said one hundred seventy-one shares of stock to said second party.

"IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written.

ROSE NEAL
RAY GIFFORD
BERT GIFFORD
MONTBORNE LUMBER COMPANY
By THOMAS SMITH, President.

Attest:
JAMES G. SMITH, Secretary."

After the execution of this contract, Mr. Smith advanced to appellant ten thousand dollars, which, with six thousand dollars of other funds, was used to pay the claims of the Nelson heirs and certain taxes.

The contract dated June 1 provides that the entire block of 1,533 shares of stock should stand as collateral security for the payment of the entire purchase price, subject to delivery of the stock to Mr. Kowol if he made demand therefor. In connection with these transactions, the testimony introduced by appellant is not particularly satisfactory. Respondent's explanation thereof appeals to us as stating more nearly the correct history of what actually happened, and the true intention of the parties.

The contract of June 1 stated that all of the Nelson-Neal stock had been hypothecated and was in the possession of Bingham & Co. Such was not the fact. Mrs. Neal had in her possession 953 shares of the stock, and this block had never been pledged. Mrs. Neal testified that, on the morning of June 3, Messrs. Smith and Day called at her residence and asked about the records of the Nelson-Neal corporation, and that she then produced the stock certificates for the 953 shares; that Mr. Smith took this stock and told her he would keep it for her, he at that time representing her as her counsel. Mrs. Neal testified that Mr. Smith then and there took possession of the stock.

Appellant's testimony contradicts Mrs. Neal's statements in connection with this matter. Mr. Day testified that he alone went to Mrs. Neal's home, and that he received from her the stock certificates, and that he thereafter consolidated the same into one certificate and transferred the stock on the books of the corporation into the name of appellant. It would seem that all of this happened on or about June 8, at which time respondent Neal was entitled to the stock, either as owner or as collateral security, pursuant to the contract of June 1. In response to a question by appellant's counsel as to on whose behalf he asked Mrs. Neal for the stock, the witness stated:

"A. At that time the Neals and Giffords had resigned as officers of the Nelson-Neal. Q. And you put it in the vault? A. I don't suppose in any particular capacity."

Just prior to the execution of the contract of June 22, respondent Neal was at Mr. Smith's office, she and her grandsons all testifying that Mr. Smith told them that he had not been able to settle with Mr. Kowol, and that he would have to have a new contract in order to "whip Mr. Kowol into line," and that the

contract of June 22 was then prepared and executed. Mr. Smith was at that time Mrs. Neal's attorney, and testified in this case that his main purpose in the transactions now under discussion was to save Mrs. Neal. Under the construction which appellant seeks to place upon this contract, Mrs. Neal released her collateral security, and would be in a much worse position than she was before under the contract of June 1.

Appellants now contend that the corporation was at this time insolvent and unable to pay its debts, which, if true, makes the matter more difficult of comprehension, as Mr. Smith must have well known appellant's financial condition, and certainly would not have allowed his old friend and client, whom, as he testified, he was trying hard to protect, to release her collateral security and rely only upon the unsecured promise of an insolvent corporation.

It is evident that Mrs. Neal, as she was entitled to do, relied entirely upon Mr. Smith's advice. During the course of the trial, the court referred to Mrs. Neal in the following language:

"Now, Mrs. Neal (a motherly old lady whom the supreme court will not have the advantage of seeing) but I can tell she doesn't know anything about it. One of these confiding women who rely entirely upon a man in whom she had confidence. And whatever Mr. Smith said she accepted that as law."

The trial court was thoroughly convinced that Mrs. Neal and her grandsons did not understand the possible legal effect of the transactions had between them and appellant following the execution of the contract of June 1 and including the execution of the contract of June 22. The court several times expressed this view of the evidence, and we think correctly estimated the situation. Discussion of the evidence concerning this matter could easily be indefinitely pro-

longed, but such discussion would greatly extend this opinion, and would serve no good purpose.

We are satisfied that the evidence clearly preponderates in support of the ruling of the trial court in favor of respondents Neal and Kowol, holding that they are entitled to judgment on their notes and foreclosure of their liens on the stock as pledgees thereof.

It was, of course, necessary that the receiver prove that appellant was insolvent when the money sought to be recovered was paid out, and that the money which it disbursed pursuant to the contracts with respondent Neal was so expended in violation of the trust fund theory and, therefore, recoverable herein. Mr. Smith, while he testified at length, was not interrogated as to the financial condition of appellant, although he must have been thoroughly acquainted with its financial status at all times. Mr. Day testified that appellant was insolvent at the time it made the payments pursuant to its contracts with respondent Neal.

We have carefully examined the evidence as to the matter of insolvency, and conclude that the trial court did not err in ruling that the receiver is not entitled to judgment for the return of any payments made. At the time of these transactions, the appellant corporation was doing business and borrowing money from people who must have known its exact financial status. The question of insolvency is, of course, the vital question in determining whether or not appellant receiver may recover payments made by the corporation, and we are satisfied that the trial court did not err in holding that, upon the record, the receiver was not entitled to judgment for the return of any of the sums paid by the corporation.

Judgment affirmed.

TOLMAN, C. J., STEINERT, and MAIN, JJ., concur.